UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 13-364-DLB

MELVIN MARION CARRINGTON                                 PLAINTIFF

vs.                **MEMORANDUM OPINION AND ORDER**

CAROLYN W. COLVIN,
Commissioner of Social Security                              DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record and for reasons set forth herein, hereby reverses and remands the Commissioner's decision.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Melvin Marion Carrington protectively filed his current application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") payments, alleging disability as of August 1, 2010.  (Tr. 136-39).  Plaintiff's claim was denied initially and on reconsideration.  (Tr. 83-90).  On July 25, 2012, Administrative Law Judge Roger L. Reynolds conducted an administrative hearing at Plaintiff's request.  (Tr. 30-59).  ALJ Reynolds ruled that Plaintiff was not entitled to benefits on August 9, 2012.  (Tr. 17-29).  This decision became the final decision of the Commissioner when the Appeals Council denied review on August 21, 2013.  (Tr. 11-15).

On October 29, 2013, Plaintiff filed the instant action. (Doc. # 1). This matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review. (Docs. # 16 and 17).[1]

## II. DISCUSSION

### A. *Overview of the Process*

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national

---

1) Although Plaintiff's Motion is styled as a Motion for Judgment on the Pleadings (Doc. # 16), the arguments raised therein are properly evaluated under the summary judgment standard. Accordingly, the Court construes Plaintiff's Motion as a Motion for Summary Judgment in all substantive respects.

2

economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.     The ALJ's Determination

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (Tr. 22). At Step 2, the ALJ determined that Plaintiff has two severe impairments: (1) coronary artery disease, status post-PTCA (percutaneous transluminary coronary angioplasty) with stents, followed by coronary artery bypass graft of the left anterior descending artery; and (2) chronic stable angina. (*Id.*).

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 23).  At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a full range of light work:

> Light work is defined at 20 CFR 404.1567(b) and 416.967(b) as involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, a person must have the ability to do substantially all of these activities.  If someone case do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(*Id.*). The ALJ further noted that Plaintiff is unable to perform past relevant work. (Tr. 25).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. (*Id.*). At Step 5, the ALJ found that, because "the claimant has the residual functional capacity

3

to perform the full range of light and sedentary work, a finding of 'not disabled' is directed by the Medical-Vocational Rules 202.21 and 201.21." (Tr. 26).

### C. Plaintiff's Arguments

Plaintiff essentially raises three arguments on appeal.[2] He first contends that the ALJ did not properly consider the applicability of any Listings of Impairments. (Doc. # 16-1 at 1). He then argues that the ALJ improperly applied the "treating physician rule." (*Id.*). Finally, he complains that the ALJ failed to consider the testimony of the vocational expert ("VE").[3] (*Id.*). The Court will address each of these arguments in turn.

#### 1. The ALJ's Step 3 analysis is not supported by substantial evidence

At the third step in the disability determination process, the ALJ considers the medical severity of the claimant's impairment. 20 C.F.R. 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Specifically, the ALJ must determine whether the claimant's impairment meets or equals one of the Listings of Impairments, which "describe[ ] for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. Part 404, Subpart P, Appendix 1; *see also* 20 C.F.R. §

---

2) Plaintiff actually frames the issues as follows: (1) "The ALJ did not appropriately apply the 'treating physician rule' with regard to medical opinion regarding the Plaintiff's disability[;]" and (2) "The ALJ failed to properly apply the statutory and regulatory requirements of the Social Security Act when determining the Plaintiff did not meet a disability listing and/or when determining the Plaintiff's residual functional capacities." (Doc. # 16-1 at 1). The VE argument is not identified in the "Issues Presented" section; rather, it is tacked on at the end of Plaintiff's analysis. (*Id.* at 10).
   The Court has structured its analysis of these issues so that it mirrors the five-step disability inquiry. The Court has also elected not to treat the RFC issue separately, as Plaintiff's analysis is essentially a recapitulation of arguments raised with respect to the "treating physician rule."

3) Although a VE did testify at the administrative hearing, the ALJ ultimately relied on the Medical-Vocational Guidelines at Step 5. (Tr. 25-26, 30-57).

404.1525(a). If the claimant can satisfy all of the objective medical criteria, as well as the duration requirement, then he or she "will be deemed conclusively disabled[ ] and entitled to benefits." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011); *see also* 20 C.F.R. § 404.1509 (stating that the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months," unless it is expected to result in death).[4]

In conducting this inquiry, the ALJ must "actually evaluate the evidence, compare it to the applicable Listings, and give an explained conclusion, in order to facilitate meaningful review." *Reynolds*, 424 F. App'x at 416. If the ALJ "offers nothing to support his conclusions at step three, a reviewing court cannot tell whether the ALJ's decision is based on substantial evidence." *James v. Colvin*, Civ. A. No. 3:11-CV-640-S. 2013 WL 4096977, at *8 (W.D. Ky. Aug. 13, 2013). "The reviewing court is thereby deprived of any opportunity to provide meaningful judicial review." *Id.* Failure to conduct a reasoned analysis at Step 3 may constitute reversible error. *See Reynolds*, 424 F. App'x at 416 (finding that "correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence Reynolds put forth could meet this listing"); *James*, 2013 WL 4096977, at *8 ("Because he failed to explain which Listing Impairment he considered, evidence he relied upon and which he rejected, the ALJ's error was not harmless.").

At Step 3, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments

---

4) The ALJ may also find that the claimant is *per se* disabled if he or she demonstrates that the impairment is "at least equal in severity and duration to the criteria of any listed impairment" and meets the duration requirement. 20 C.F.R. § 404.1525(c)(3).

5

in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 23). The ALJ's supporting analysis consists of a single paragraph, which is quoted below. (*Id.*).

> A review of the severe impairments shows:
>
> Pattie A. Clay Hospital treated claimant with morphine, nitroglycerine, Ativan, etc., for chest pain, on 08/02/10, before transferring him to the St. Joseph Hospital cardiac ward. (Exh. 1F). St. Joseph Hospital admitted the claimant on 08/02/10 under the care of Kentucky Cardiology, PLLC, for a diagnostic left heart catheterization, with claimant to return in one or two weeks for catheter-based intervention to the left circumflex. Mr. Carrington subsequently underwent an unsuccessful catheter based attempt at revascularization of the left anterior descending artery. By 11/22/10 an echo study showed left ventricular systolic function well preserved with an estimated ejection fraction of 55% visually, with mild left ventricular hypertrophy, and mild left atrial enlargement. Dr. Michael Sekela on 11/23/10 performed a coronary artery bypass graft of the anterior descending artery. By 05/25/11 Mr. Carrington reported he 'feels pretty good.' (Exhs. 2F, 3F). Progress notes through 06/08/12 indicate 'stable coronary artery disease with occasional retrosternal disturbances,' and hypertension. By 07/24/12 Mr. Carrington was report[ing] intermittent heart palpitations, characterized by his cardiologists as premature ventricular contractions, as noted above. Dr. Brumfield proposed to check the claimant's TSH or thyroid stimulating hormone and to increase the dose of Coreg. (Exh. 4F).

(*Id.*).

Plaintiff complains that the ALJ failed to compare the evidence against the applicable Listings and provide an explanation for his conclusion. He further contends that this is reversible error because he meets the requirements for Listing 4.04B (ischemic heart disease):

> ***4.04 Ischemic heart disease***, with symptoms due to myocardial ischemia, as described in 4.00E3-4.00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment), with one of the following:
>
> . . .
>
> **B.** Three separate ischemic episodes, each requiring revascularization or not amenable to revascularization (see 4.00E9f), within a consecutive 12-month

6

period (see 4.00A3e).

*See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 4.04B. "Revascularization means angioplasty (with or without stent placement) or bypass surgery." *Id.* at Listing 4.00E9f. "Not amenable means that the revascularization procedure could not be done because of another medical impairment or because the vessel was not suitable for revascularization." *Id.* Plaintiff believes that the Listing is satisfied because he underwent two bypass operations and several stenting procedures in late 2010. (Doc. # 16-1 at 8-9). The Commissioner maintains that Plaintiff's impairment does not meet the Listing because only one of these procedures was precipitated by an ischemic episode. (Doc. # 17 at 7).

Although the ALJ accurately summarized the medical evidence in the record, he did not identify the Listings considered or explain why Plaintiff's impairment did not meet those Listings. As a result, the Court cannot conduct a meaningful judicial review of such a perfunctory Step 3 analysis, nor can it conclude that this error was harmless. Plaintiff has identified some evidence in support of his position that he meets Listing 4.04B. Because this evidence is not obviously insufficient to satisfy this Listing, remand is necessary. While the Court could halt its inquiry here, it will address Plaintiff's remaining arguments so that it may further guide the ALJ's analysis on remand.

    **2.    The ALJ erred in his application of the "treating physician rule"**

In social security disability cases, the Commissioner depends on medical sources "to provide evidence, including opinions, on the nature and severity of [claimant's] impairment(s)." 20 C.F.R. § 404.1527(d)(2). Such evidence may come from treating sources, non-treating sources and/or non-examining sources. 20 C.F.R. § 404.1502. A treating source is the claimant's "own physician, psychologist, or other acceptable medical

7

source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Id.*

A treating source's opinion is entitled to controlling weight if it is "'well supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)(*quoting* 20 C.F.R. § 404.1527(d)(2)). If a treating source's opinion is not entitled to controlling weight, the ALJ must consider the following factors in order to determine how much weight to give the opinion: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. *Id.*

In such situations, the ALJ must also provide "good reasons" for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(d)(2). Accordingly, "a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). This "good reasons" requirement not only enables claimants to better understand the disposition of their case, it allows for meaningful review of the ALJ's decision-making process. *Wilson*, 378 F.3d at 544.

This "treating physician rule" only applies to *medical* opinions. While a medical expert may opine "on issues such as whether [claimant's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments," as well as claimant's

8

residual functional capacity or the application of vocational factors, such opinions are not entitled to controlling weight. 20 CFR § 404.1527(d)(2) (stating that "the final responsibility for deciding these issues is reserved to the Commissioner"). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Turner v. Comm'r of Soc. Sec.*, 2010 WL 2294531, at *4 (6th Cir. June 7, 2010).

In this case, Plaintiff's treating physician, Dr. Avichai Eres,[5] drafted a letter in support of his application for disability benefits. (Tr. 329). The letter stated, in pertinent part:

> As you will recall, on 08/02/10, you had suffered from non-ST elevation myocardial infarction. Cardiac catheterization was performed and it showed significant multivessel coronary artery disease. We went ahead and stented the right coronary artery and subsequently, the left circumflex coronary artery. We had an attempted opening up of the left anterior descending coronary artery, i.e., the artery in the front and we were unsuccessful. You subsequently underwent coronary artery bypass graft surgery, receiving LIMA to the LAD; however, this artery appears to be diffusely diseased. Your ejection fraction is normal. As a result, you continue to have anginal symptoms with chest pain, walking 1 to 200 yards, relieved by nitroglycerin. This will require lifelong medical therapy with Ranexa, aspirin, Plavix, Lipitor, Coreg, Lasix, and Zestril. At the present time, I do not believe that you are a candidate for any type of physical activity or mentally stressful job. You also have occasional dizziness related to the treatment of angina. I see that it is a potentially recurring problem. I would therefore recommend refraining from physical activity i.e., more than light house work and would refrain from mental stress with any type of work.

(*Id.*).

At Step 4 of his analysis, the ALJ addressed Dr. Eres' opinion as follows:

Concerning opinion evidence, it is consistent in its lack of any finding of disability on the part of either examining, treating, or reviewing medical personnel. This is powerful evidence that the claimant is not disabled and

---

5) The parties do not dispute that Plaintiff and Dr. Avichai Eres had established a treating physician relationship.

9

> the Administrative Law Judge gives it great weight. Dr. Avichai Eres of Kentucky Cardiology limited the claimant to light housework, with no mental stress but there is no medical evidence of record or objective testing to support such stringent limitations, and claimant has a normal ejection fraction. In sum, the above residual functional capacity is supported by the written medical record.

(Tr. 25). Plaintiff argues that the ALJ should have afforded Dr. Eres' opinion controlling weight, or at least articulated "good reasons" for his failure to do so. The Commissioner insists that Dr. Eres' opinion was not entitled to controlling weight because it focused on the ultimate issue of disability, which is reserved for the ALJ. The Commissioner also maintains that the ALJ's treatment of the opinion is supported by substantial evidence.

Both parties are partially correct. Dr. Eres opined that Plaintiff was not a "candidate for any type of physical activity or mentally stressful job." (Tr. 329). He also stated that Plaintiff should refrain from physical activity (beyond light housework) and "mental stress with any type of work." (*Id.*). These statements pertain to Plaintiff's residual functional capacity, as well as the ultimate issue of disability, both of which are reserved for the Commissioner. Thus, Dr. Eres' opinion on these matters is not entitled to controlling weight. While this does not allow the ALJ to reject the opinion outright, he need only explain the consideration given to the opinion. The ALJ did so in this case, stating that "there is no medical evidence of record or objective testing to support such stringent limitations, and claimant has a normal ejection fraction." (Tr. 25).

However, Dr. Eres also expressed some opinions about the nature and severity of Plaintiff's impairment. He explained that Plaintiff continued to suffer from angina symptoms, including dizziness, which would require lifelong treatment. (Tr. 329). This is precisely the type of opinion that falls within the scope of the "treating physician rule."

Although the ALJ stated that the opinion evidence "is consistent in its lack of any finding of disability on the part of either examining, treating, or reviewing medical personnel" and that "[t]his is powerful evidence that the claimant is not disabled," he does not identify the medical personnel or explain how he evaluated their opinions. (Tr. 25). While it is possible that Dr. Eres' medical opinions are included in this statement, the Court suspects that they are not. The ALJ specifically discusses Dr. Eres' statements, solely in terms of his vocational opinions, later in the paragraph. Thus, the Court cannot tell whether or not the ALJ gave Dr. Eres' medical opinions controlling weight, and if not, why he decided that less weight was appropriate. Because it is unclear whether or not the ALJ complied with the "treating physician rule," the Court finds that remand is appropriate on this ground as well.

        **3.**        **The Court need not decide whether the ALJ committed an error at Step 5**

At Step 5, "[a]n ALJ may rely solely upon the [Medical Vocational Guidelines] if the claimant's RFC findings coincide with the grid criteria." *Lobdell v. Comm'r of Soc. Sec.*, 2015 WL 3441161, at *2 (E.D. Mich. May 28, 2015) (citing 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a)); *see also Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003) ("In general, where the characteristics of the claimant exactly match the characteristics in one of the rules, the grid determines whether significant numbers of other jobs exist for the person or whether that person is disabled."). *Accord Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008) ("[R]ote application of the grid is inappropriate when the claimant suffers from *both* exertional *and nonexertional* limitations that diminish his capacity to work.") (internal quotations omitted) (emphasis added).

Plaintiff argues that the ALJ should have relied on vocational expert ("VE") testimony to find that he was not capable of substantial gainful employment. (Doc. # 16-1 at 10). However, the ALJ found that Plaintiff had an RFC to perform a full range of light work, then applied the Medical-Vocational Guidelines to find that Plaintiff was not disabled. (Tr. 24-25). As explained above, the law allows ALJs to use the Medical-Vocational Guidelines in such a fashion. The Court cannot determine whether the ALJ appropriately used the Guidelines in this instance because such an inquiry is tied to the RFC analysis on remand. If the ALJ finds on remand that Plaintiff is capable of performing a full range of light work, then the Step 5 analysis would be sound. If the ALJ revises his RFC finding on remand, then a revised Step 5 analysis would likely be necessary.

### III. CONCLUSION

For reasons stated herein, the Court concludes that the ALJ failed to follow the SSA's regulations and a remand is required. Accordingly,

**IT IS ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment (Doc. # 16) be, and is, hereby **GRANTED**;

(2) Defendant's Motion for Summary Judgment (Doc. # 17) be, and is, hereby **DENIED**;

(3) This action be, and is, hereby **REMANDED** to the Commissioner under Sentence Four of 42 U.S.C. 405(g) with instructions to adequately analyze the applicability of any Listing of Impairments and explain his treatment of Dr. Avichai Eres' opinion, consistent with this Memorandum Opinion and Order; and

(4)   A Judgment will be entered contemporaneously herewith.

This 1st day of July, 2015.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\Lexington\13-364 Carrington MOO.wpd